# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal Case No. 6:06cr00013-1** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BRAD CHRISTOPHER HULL,** | ) | **By: Robert S. Ballou** |
| **Petitioner.** | ) | **United States Magistrate Judge** |

## REPORT AND RECOMMENDATION

Brad Christopher Hull, a federal inmate proceeding with counsel, filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, challenging his 2006 conviction and sentence. Hull alleges 43 claims of ineffective assistance of counsel against his trial and appellate counsel. By Order dated August 7, 2013, the court took the government's motion to dismiss under advisement and referred the motion to me to conduct an evidentiary hearing on Claim 8 and to provide a report and recommended findings and disposition for all of Hull's claims, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I find that none of Hull's claims have merit and, therefore, **RECOMMEND GRANTING** the United States' motion to dismiss.

## I. BACKGROUND

### A. Trial Evidence

On July 29, 2005, an officer with the Arizona Department of Public Safety Counternarcotics Alliance Task Force followed a van driven by Hull's codefendant, Leon Lawing, after she observed him enter an area known for drug dealing. Dkt. No. 170, p. 61-62. When Lawing was pulled over for speeding, 5.79 kilograms of cocaine and 11.15 kilograms of marijuana were found in his van. Dkt. No. 170, p. 79-80, 88-91, 146-48. The search also led to the

discovery of a Budget vehicle rental agreement in codefendant Terrell Booker's name, an insurance document in Hull's name, a "soft cast," a video camera with footage of Hull, Lawing, and Booker on a trip to Los Angeles, and other assorted items belonging to Hull and Booker. Dkt. No. 170, p. 64-65, 97-99, 105, 189-90.

Lawing subsequently cooperated with the government and revealed that he transported drugs with Booker and Hull from Los Angeles, California to Lynchburg, Virginia. Dkt. No. 170, p. 114-115. He told law enforcement that the group purchased cocaine and marijuana from a drug dealer named "Carlos" in a June 2005 trip to Los Angeles (Dkt. No. 170, p. 163-68) and a drug dealer known as "John" in the July 2005 trip. Dkt. No. 170, p. 175-88. At the end of both trips, Hull and Booker flew back to Virginia and Lawing drove the drugs back in a rental car. Dkt. No. 170, p. 196-97; Dkt. No. 171, p. 26-27. During the June 2005 trip that was not intercepted by law enforcement, Lawing unloaded the drugs at Hull's house on his direction. Dkt. No. 170, p. 172. Lawing was arrested returning from his second trip in July 2005 (Dkt. No. 170, p. 111-12); after a series of recorded calls with Hull and Booker about the drug drop-off, Lawing was instructed to drop off the drugs at Booker's mother's house. Dkt. No. 170, p. 209-17. Law enforcement arrested both Lawing and Booker upon arrival at the house. Dkt. No. 170, p. 218.

A grand jury of this court returned a one-count indictment against Hull on May 11, 2006, charging that he conspired to distribute and possess with intent to distribute more than five kilograms of cocaine and a measurable quantity of a mixture or substance containing marijuana, in violation of 21 U.S.C. § 841 and § 846. Dkt. No. 3. Federal authorities arrested Hull on the basis of the indictment on May 19, 2006. Dkt. No. 15. At the time of his prosecution for the conviction currently on appeal, Hull also faced state charges where he was represented by the same trial counsel, Melvin Hill. Dkt. No. 240, p. 46. A jury ultimately convicted Hull (Dkt. No. 107) and the

court sentenced him to 292 months in prison.  Dkt. No. 158, p. 2.  The Fourth Circuit affirmed the court's decision (Dkt. No. 181), and the judgment became final on August 2, 2010.  Dkt. No. 190.

## B. Evidentiary Hearing

Judge Norman K. Moon ordered an evidentiary hearing to determine whether Hull's counsel rendered ineffective assistance by erroneously advising him (1) to reject the government's plea offer because he would receive the same sentence whether he plead guilty or went to trial, and (2) that his prior conviction would not be used as a basis to double his mandatory minimum sentence.  Dkt. No. 229.  I held an evidentiary hearing on Hull's § 2255 motion on June 10, 2014. Dkt. No. 237.  Hull and his former trial counsel, Melvin Hill, testified about their trial strategy and review of the government's offered plea.  Dkt. No. 240, p. 2. The testimony of both witnesses created the following summary of events surrounding the government's offered plea.

The United States Attorney's Office sent a letter to trial counsel on July 3, 2006, notifying him that Hull's sentencing exposure from the indictment included a mandatory minimum of ten years and that his estimated sentencing exposure ranged from 151 to 188 months without prior acceptance of the plea, or 108 to 135 months with acceptance of the plea.  Dkt. No. 238-2, p. 1-2. The letter also stated that the government intended to file an § 851 Sentencing Information[1] if they went to trial, which would increase Hull's mandatory minimum sentence to twenty years.  Dkt. No. 238-2, p. 2.  Trial counsel acknowledged at the evidentiary hearing that this letter stated Hull faced a more severe sentence if he pursued trial. Dkt. No. 240, p. 13.  In a September 7, 2006 letter, the government asked trial counsel to speak with him and reiterated he would not file the

---

[1] The relevant criminal history of Hull includes a conviction in the Lynchburg Circuit Court in October 1995 for possession of cocaine with intent to distribute, in violation of Va. Code § 18.2-248.  Dkt. No. 73; see also Commonwealth v. Hull, CR95006666-00 (Va. Cir. Ct., Lynchburg Cir. 1995).  The court sentenced Hull to ten years in prison, with five years suspended, and probation for ninety-nine years.

3

§ 851 Sentencing Information until after they spoke.  Dkt. No. 238-2, p. 3.  The government sent a third letter to trial counsel dated October 11, 2006–roughly five weeks before trial.  Dkt. No. 238-2, p. 5-6.  He again outlined Hull's sentencing exposure.  Dkt. No. 238-2, p. 5-6. The government wrote that Hull's prior drug felony conviction would increase his mandatory minimum sentence to 20 years, and that they would recommend a guideline range of 292 to 365 months based on Hull's prior drug trafficking trips to California and "the fact that Hull cooked the cocaine into crack." Dkt. No. 238-2, p. 6.  Trial counsel sent a letter to Hull dated October 12, 2006 that included the government's plea offer and confirmed an appointment with him for October 17, 2006.  Dkt. No. 238-1, p. 1.  At the evidentiary hearing, trial counsel stated that the purpose of the meeting would have been "[t]o review the case in general, or to review the proposed plea agreement."  Dkt. No. 240, p. 12.

The events after trial counsel's letter to Hull are the subject of Hull's controversy, mostly as a result of lack of memory due to the age of the case.  Trial counsel had very little recollection of his representation of Hull.  Dkt. No. 240, p. 5.  Although he did not remember he had received a plea offer, trial counsel was able to confirm his signature on the letter to Hull accompanying the government's offer.  Dkt. No. 240, p. 5-7.  Trial counsel remembered meeting with Hull at his office, but he did not remember any of the details of the conversation or whether it concerned the plea agreement.  Dkt. No. 240, p. 5, 7.  He could not recall any decisions or conclusions he made in Hull's case, or whether he discussed Hull's sentencing exposure if he pursued trial. Dkt. No. 240, p. 26-28.  Despite trial counsel's lack of memory for much of his representation of Hull, he did recall that "Mr. Hull always wanted to go to trial. I do not recall a time during my representation of him–and again, I emphasize, I do not recall him seriously considering entering a guilty plea in this particular case."  Dkt. No. 240, p. 26.

Trial counsel's case file for his representation of Hull provides a better picture of his representation. Dkt. No. 240, p. 27-28. In his notes for a client interview from October 24, 2006,[2] trial counsel wrote: "Advised CL G plea offer–would face 20-year sentence if convicted." Dkt. No. 238-2, p. 7. Trial counsel could not "recall the context in which I would have made the notations or any of the notes on October 24th." Dkt. No. 240, p. 29. Although trial counsel's memory did not provide context to his notes, his stated pattern and practice supported the likelihood that his notes summarized his discussion of a twenty-year sentencing exposure with Hull. Trial counsel explained that his practice upon receiving any letter from the government, including letters with plea offers, was to forward it to his clients and urge them to set up an appointment to discuss the information. Dkt. No. 240, p. 10, 17-19. In addition to his interview notes, the case file included a draft of a sentencing memorandum[3] and a copy of Apprendi v. New Jersey, 544 U.S. 13 (2005). Dkt. No. 240, p. 31. The memorandum argued that Hull's prior conviction and increased drug weight should not be considered at sentencing because of Apprendi. Dkt. No. 238-1, p. 17-19. Although the memorandum is forcefully worded, trial counsel clearly understood that the applicability of Apprendi was within the court's discretion. Dkt. No. 238-1, p. 17 ("If the Court finds that the drug weight calculation and the information are unconstitutional then the guideline range is 151-188 months.").

Hull's memory differs from his trial counsel's testimony, case file, and stated practice. Hull did not remember whether trial counsel showed him the government's letters, but he was aware of the government's attempt to enhance his mandatory minimum. Dkt. No. 240, p. 39, 46.

---

[2] Trial counsel had no recollection of whether his October 17 meeting scheduled with Hull to discuss the plea offer had been moved to October 24. Dkt. No. 240, p. 28. His notes also inexplicably included information about witnesses and their phone numbers. Dkt. No. 240, p. 21-22, 29. No notes were offered at the evidentiary hearing regarding any contact on October 17 with Hull.

[3] Trial counsel recalled being relieved as counsel prior to sentencing and stated "it would have surprised me that I drafted a sentencing memorandum." Dkt. No. 240, p. 31.

Hull recalls having a meeting with trial counsel discussing the plea offer, though he did not know the date. Dkt. No. 240, p. 34. Although Hull failed to remember exactly what happened during their meeting to discuss the plea agreement, he emphasized that trial counsel clearly explained that the government's enhancement was unconstitutional. Dkt. No. 240, p. 34-35, 42. Hull remembered trial counsel telling him "being that the enhancement was unconstitutional, my sentencing exposure still remained a ten-to-life situation in both cases of the plea or trial, so that, you know, I really didn't have nothing to lose or gain by taking the plea or proceeding to trial." Dkt. No. 240, p. 35. Hull stated that trial counsel recommended foregoing the plea offer because his sentence would be the same regardless of the plea, and they could at least try to win the case if he rejected it. Dkt. No. 240, p. 35.

Hull emphasized that he heavily relied on trial counsel's advice because he lacked a general understanding of his legal circumstances. In his recollection, trial counsel did not explain to him what he would be pleading guilty to if he accepted the plea agreement.[4] Dkt. No. 240, p. 43. Hull could not recall if he had a discussion with trial counsel about how much time he may serve if he was found guilty of the indicted charges. Dkt. No. 240, p. 45. Hull said he had no conversations about sentencing guidelines. Dkt. No. 240, p. 44. When asked whether he would have accepted the plea offer if he had understood the effect of <u>Apprendi</u>, Hull noted his lack of understanding of the law and responded "I would have done what was most beneficial to me under the advice of my attorney." Dkt. No. 240, p. 37.

The government withdrew the plea in its November 2, 2006 letter to trial counsel. Dkt. No. 238-1, p. 15-16. Trial counsel stated at the hearing that he had never known the government to

---

[4] Hull understood that he was charged with conspiracy to possess cocaine and marijuana, though he did not mention his charge for distribution. Dkt. No. 240, p. 43. Hull's understanding of the plea agreement is less clear; at the evidentiary hearing, he stated "I mean, at the time, I mean, when I read it, I didn't have any idea what I was reading. I wasn't knowledgeable of the law, you know." Dkt. No. 240, p. 42.

6

withdraw a plea offer after a defendant has accepted it. Dkt. No. 240, p. 8. Trial counsel believed that the United States Attorney's Office would have proceeded in presenting the guilty plea to the court if Hull had accepted, and that the court would have accepted such a plea offer. Dkt. No. 240, p. 8-9.

## II.

Hull alleges 37 claims of ineffective assistance of trial counsel and 6 claims of ineffective assistance of appellate counsel. I find that none of these claims meet both the performance and prejudice prongs of Strickland v. Washington, 466 U.S. 668, 669 (1984), and, therefore, I recommend that the government's motion to dismiss be granted.

To establish a claim of ineffective assistance of counsel, Hull must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's allegedly deficient performance. Strickland, 466 U.S. at 669; see also Williams v. Taylor, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Strickland, 466 U.S. at 689; see also Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977). In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance; that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694.

The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citing Hutchins, 724 F.2d at 1430-31). If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290 (citing

7

Strickland, 466 U.S. at 697).  A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance.  Strickland, 466 U.S. at 689.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields, 956 F.2d at 1297-99; Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985).  In this case, Hull has not demonstrated ineffective assistance of counsel.

### III. Trial Counsel's Alleged Ineffective Assistance

### A. Guilty Plea Offer (Claim 8)

Neither the record of the criminal proceedings nor the evidence submitted at the evidentiary hearing supports a finding that the performance of trial counsel fell below an objective standard of reasonableness.  Hull has not demonstrated by a preponderance of the evidence that his counsel provided constitutionally ineffective assistance when advising him about the government's plea offer.  His assertions that his counsel advised that (1) he would receive the same sentence whether he pled guilty or went to trial, and (2) his prior conviction could not be used as a basis to double his statutory minimum sentence, have not been borne out by the evidence in the record or at the evidentiary hearing.  In reaching this finding, I have taken into account the testimony from the evidentiary hearing, the extent of detail and coherent nature of the testimony, my observation of the witnesses, and the degree to which the testimony is consistent or inconsistent with, or corroborated by, other evidence in the case.  Therefore, I recommend that the government's motion to dismiss be granted as to Claim 8.

In Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012), the Court held that Strickland applies to the plea bargaining process. To establish a Sixth Amendment violation based on counsel's failures during the plea bargaining process, a petitioner must show that counsel provided deficient advice during the plea bargaining process and that a reasonable probability exists that, absent the deficient advice, the defendant would have accepted a plea, the plea would not have been withdrawn, the court would have accepted the plea, and the plea would have resulted in a less severe conviction, sentence, or both. Id. at 1384-88, 1390-91 (applying Strickland, 466 U.S. at 687).

Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. See Strickland, 466 U.S. at 689; see also Fields, 956 F.2d at 1297-99; Hutchins, 724 F.2d at 1430-31. Codified standards of professional practice serve as important guides for the determination of ineffective assistance, although they are not the sole factor for review. See Missouri v. Frye, ___ U.S. ___, 132 S. Ct. 1399, 1408 (2012). "[T]he mere fact that counsel cannot recall the tactical basis for his or her decisions does not rebut the presumption that counsel acted reasonably." Morgan v. Swarthout, No. C 10-03294 EJD PR, 2012 WL 5389720, at *14 (N.D. Cal. Nov. 2, 2012) (citing Alcala v. Woodford, 334 F.3d 862, 870-71 (9th Cir. 2003)). When counsel has no independent recollection of an event, he can rely on the evidence that exists and testify to his common practice. See Benitez v. United States, No. 208-CV-956-FTM-99DNF, 2009 WL 4510108, at *4 (M.D. Fla. Dec. 1, 2009).

Providing incorrect legal advice amounts to ineffective assistance. See Lafler, 132 S. Ct. at 1384 (accepting concession of ineffective assistance when counsel advised client not to accept plea based on his misunderstanding of Michigan law); Harris v. United States, 701 F. Supp. 2d 1084, 1093-94 (S.D. Iowa 2010) (finding ineffective assistance when counsel incorrectly advised

his client that she could only be held responsible for the drug amounts charged in her indictment, which probably caused her to reject the government's plea offer). However, misrepresentations about sentencing exposure generally do not rise to ineffective assistance. See Sanchez v. Schroeder, No. CIV 11-01237 PHX NVW, 2011 WL 6298182, at *6 (D. Ariz. Oct. 20, 2011) report and recommendation adopted, No. CV 11-01237-PHX-NVW, 2011 WL 6296921 (D. Ariz. Dec. 16, 2011) (citing Weaver v. Palmateer, 455 F.3d 958, 968, 455 F.3d 958 (9th Cir. 2006); Sophanthavong v. Palmateer, 378 F.3d 859, 868 (9th Cir. 2004) ("To establish a claim of ineffective assistance of counsel based on alleged erroneous advice regarding a guilty plea, a petitioner must demonstrate more than a mere inaccurate prediction.") (internal citations and quotations omitted)).

Some courts have determined that grandiose misrepresentations constitute ineffective assistance. See Alvernaz v. Ratelle, 831 F. Supp. 790, 794-95 (S.D. Cal. 1993) (finding ineffective assistance when counsel failed to tell his client that he could receive a life sentence if he went to trial). However, such misadvice must be "more than a mere inaccurate prediction" and must amount to a "gross mischaracterization of the likely outcome" of sentencing. Sanchez, 2011 WL 6298182, at *6 (citing Sophanthavong, 378 F.3d at 868 (describing an attorney's actions "deficient only if they constitute gross mischaracterization of the likely outcome of a plea bargain combined with ... erroneous advice on the probable effects of going to trial.") (internal citations and quotations omitted); Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986)). The petitioner carries the burden of demonstrating that his counsel's contested advice fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced him. Strickland, 466 U.S. at 688, 694.

Case 6:06-cr-00013-NKM-RSB   Document 243   Filed 02/27/15   Page 10 of 43   Pageid#: 1489

If the petitioner establishes that counsel provided ineffective assistance, then he must demonstrate that the outcome of the plea process would have differed if he had received competent advice. Lafler, 132 S. Ct. at 1391. The alleged prejudice is the petitioner's experience of standing trial, where the petitioner suffered a more severe sentence than if he had accepted the offered plea. Id. at 1385-86. The addition of any amount of time to a petitioner's sentence due to ineffective assistance during plea bargaining constitutes prejudice. Id. at 1386 (citing Glover v. United States, 531 U.S. 198, 203 (2001)). The petitioner must demonstrate a reasonable probability that "the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id.; see also Frye, 132 S. Ct. at 1409. A reasonable probability of prejudice is less likely if the petitioner maintained his innocence throughout the trial. Atkinson v. Schmidt, 486 Fed. App'x 713, 716 (10th Cir. 2012). The defendant bears the burden of proving by a preponderance of the evidence his grounds for relief under § 2255. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

In his § 2255 motion, Hull asserted that his trial counsel informed him he faced the same sentencing exposure regardless of accepting the government's plea offer. The government's plea offered a ten-year statutory minimum sentence with a guideline range of 108 to 135 months if he accepted responsibility, which is substantially less than the 292 months he received following his trial. Three components ultimately affected the increase in Hull's sentencing exposure between accepting the plea offer and going to trial: 1) the § 851 Sentencing Information, 2) the drug amounts introduced into evidence, and 3) the ability to earn a reduction for acceptance of

responsibility. Hull alleges that his trial counsel advised him not to accept the plea offer because the government could not increase his sentence with either the § 851 Sentencing Information or his higher drug weights based on Apprendi v. New Jersey, 544 U.S. 13 (2005).

In Apprendi, the Supreme Court held that the Sixth Amendment requires that any fact "[o]ther than the fact of a prior conviction . . . that increases the penalty for a crime beyond the prescribed statutory *maximum* must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added). The Court in Harris v. United States, 536 U.S. 545 (2002), held that the Sixth Amendment permitted judicial fact-finding that increases the statutory *minimum* sentence of a crime.[5] Id. at 567 (emphasis added). At the time of Hull's trial, no Supreme Court case held that judicial fact-finding for prior convictions or drug weights was unconstitutional if it increased the statutory minimum sentence of a crime.

The court finds that Hull has not carried his burden for establishing that his trial counsel provided ineffective assistance by improperly advising him to reject the plea offer. The evidence does not support that trial counsel advised Hull that the government's intended use of the § 851 Sentencing Information or post-sentence increase of the drug amounts were unconstitutional. Trial counsel's understanding of Apprendi both at the evidentiary hearing and at the time he wrote Hull's sentencing memorandum suggests that he would not have provided such unwavering advice about the constitutionality of the government's sought sentencing. In the Sentencing

---

[5] Eleven years after Harris, and seven years after Hull was convicted, the Supreme Court overruled Harris, in Alleyne v. United States, __ U.S. __, 133 S. Ct. 2151 (2013), by holding that any fact that increases the statutory minimum sentence is an element of the offense "and must be submitted to the jury and found beyond a reasonable doubt." Alleyne, 133 S. Ct. at 2158. However, the Court noted that it was "not revisit[ing]" the narrow exception that judicial fact-finding of the fact of a prior conviction was permitted, as recognized in Almendarez-Torres v. United States, 523 U.S. 224 (1998). See Alleyne, 133 S. Ct. at 2160 n.1 ("In Almendarez-Torres… we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today."). Alleyne, therefore, did not disturb that exception and does not require a prior conviction to be alleged in an indictment and submitted to the jury. See United States v. McDowell, 745 F.3d 115, 124 (4th Cir. 2014) (explaining that even after Alleyne, "Almendarez-Torres remains good law, and we may not disregard it unless and until the Supreme Court holds to the contrary").

Case 6:06-cr-00013-NKM-RSB   Document 243   Filed 02/27/15   Page 12 of 43   Pageid#: 1491

Memorandum, counsel argued that Hull "should be sentenced . . . without consideration of the prior conviction" because "the information filed in this case [is] unconstitutional pursuant to Apprendi." Dkt. No. 238-1, p. 17-18. However, trial counsel arguably knew that Apprendi did not apply to the fact of a prior conviction or to facts that do not increase the statutory maximum sentence. It is clear that trial counsel understood this when he wrote, "*If* the court finds that the . . . information [is] unconstitutional…," and "…it is apparent that the Apprendi reasoning *soon will be* extended to the fact of prior convictions." (emphasis added). Dkt. No. 238-1, p. 17-18. Although incorrectly advising Hull about the constitutionality of the government's intended sentence during the plea offer stage would amount to ineffective assistance, the evidence reflects this is not what happened between Hull and his trial counsel.

Moreover, the notes from trial counsel's October 24, 2006 meeting with Hull support that he discussed the possibility of an increased statutory minimum sentence if the plea offer lapsed. Although it is possible that trial counsel's note regarding a twenty-year sentence related to Hull's ongoing state charges, it seems more probable that the note referred to his federal charge based on the timing of the offered plea agreement. Moreover, the notes are in line with trial counsel's practice. As trial counsel stated that it was his practice to send all of the government's letters to his clients, Hull most likely met with trial counsel to discuss his plea offer and new statutory minimum sentence. Although trial counsel's practice is not definitively borne out in Hull's case, the evidence presented at the hearing supports the likelihood that he did advise Hull of the new statutory minimum and did not claim the government's position was futile due to Apprendi. Considering how careful trial counsel was in explaining what he remembered of his representation, the court can credibly accept his testimony, case file, and standard practices.

Other than Hull's testimony, none of the evidence suggests that trial counsel advised Hull not to accept the plea offer because of Apprendi. Hull's claim that counsel promised him a sentence of ten years regardless of acceptance of a plea offer is substantially undercut by evidence that Hull knew that advancing to trial did not guarantee him a sentence. Hull admitted that he read the plea agreement, which clearly stated his potential sentencing exposure. Trial counsel's pattern and practice was to show his client all of the letters received from the government. All three letters highlighted Hull's much more severe potential sentencing exposure. In light of the October 11, 2006 letter outlining Hull's sentencing exposure, trial counsel's understanding of the effect of a § 851 Sentencing Information, the October 24, 2006 meeting between trial counsel and Hull to discuss the plea agreement and the case, trial counsel's note in his file, and the testimony presented at the evidentiary hearing, I find Hull's allegation that counsel told him that he would face the same sentencing exposure regardless of acceptance of the government's plea offer is incredible and that Hull has not met his burden to demonstrate that counsel's performance was constitutionally deficient.

Even if trial counsel had advised Hull that his prior conviction and drug amounts would not be used as a basis to increase his statutory minimum sentence, Hull has failed to demonstrate that this advice prejudiced him. Defendants are not prejudiced by ineffective assistance at the plea offer stage if they did not seriously consider pleading guilty. See Atkinson v. Schmidt, 486 Fed. App'x 713, 716 (10th Cir. 2012) (finding that a defendant who maintained his innocence throughout the trial was not prejudiced by ineffective assistance in his attorney's failure to inform him of the potential sentence because he would not have likely accepted the state's plea offer); see also Lafler, 132 S. Ct. at 1389. Trial counsel stated at the evidentiary hearing that "[i]t's my recollection Mr. Hull always wanted to go to trial. I do not recall a time during my representation

of him–and again, I emphasize, I do not recall him seriously considering entering a guilty plea in this particular case." Dkt. No. 240, p. 26. When the court repeatedly asked Hull whether he would have been interested in pleading guilty, he ultimately said he would have accepted trial counsel's advice to plead guilty if he had been told that was the best opportunity. However, Hull did not eagerly express that he would have considered pleading guilty prior to his trial and seemed to mostly rely on his belief that trial counsel determined he would always face the same sentencing exposure. Dkt. No. 240, p. 37-38. Trial counsel's memory of Hull's unwillingness to plead guilty casts a shadow on the veracity of Hull's testimony that he would have pled guilty on the advice of counsel. In light of both witnesses' testimony, trial counsel's testimony is more credible. Trial counsel frankly told the court many times when he did not recall the specifics of his representation of Hull, so his memory that Hull did not seriously consider pleading guilty carries weight. With no evidence to show that he was interested in pleading guilty except for his after-the-fact testimony at the evidentiary hearing, Hull has not carried his burden that he was prejudiced by trial counsel's alleged advice.

Viewing the totality of the evidence, I find that trial counsel did not advise Hull that the government's intended § 851 Sentencing Information or inclusion of additional drug weights were unconstitutional and would not increase his sentencing exposure at trial; trial counsel did not tell Hull he would receive the same sentence either through the plea or at trial; and Hull ultimately would not have suffered any prejudice if trial counsel had ineffectively advised him because he would have proceeded to trial regardless. Although it is deeply unsettling that trial counsel maintained so few notes relating to Hull's choice to decline the guilty plea, the available evidence and testimony prevent Hull from carrying his burden that he received ineffective assistance. All trial counsel should be advised to develop and retain thorough records in order to more clearly

substantiate claims of effective representation. Hull has not carried his burden of showing he was prejudiced by ineffective assistance of counsel. Therefore, I find that counsel was not ineffective with regard to Hull's plea offer, and I recommend that the motion to dismiss be granted as to Claim 8.

## B. Pretrial Motions (Claims 2, 5, 9, 10, 11, & 14)

Through five separate claims, Hull challenged his trial counsel's choice not to file pretrial motions. Specifically, Hull questioned the trial counsel's strategy not to move for dismissal of the indictment because: the indictment included defective dates (Claim 5), the indictment was based on perjured or irrelevant testimony (Claim 9), Hull faced "unnecessary delay" in receiving his detention hearing (Claim 10), and the government caused excessive pre-indictment delay (Claim 11). Hull also questioned his trial counsel's choice not to move to suppress the testimony of government witnesses Omar King and Christopher Stamps based on their reliability (Claim 2).

When reviewing a trial counsel's approach towards pretrial motions, the court looks to whether the petitioner demonstrated that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." United States v. Galloway, 749 F.3d 238, 241 (4th Cir.) cert. denied, 135 S. Ct. 215, 190 L. Ed. 2d 164 (2014) (internal citations and quotations omitted). Filing pretrial motions is a tactical decision involving trial strategy, and is afforded deference. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998). Failure to file a frivolous motion does not constitute ineffective assistance of counsel. See Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987).

Hull primarily challenges trial counsel's approach of not attempting to dismiss the indictment. "An indictment must contain the elements of the offense charged, fairly inform a

defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense.... [T]he indictment must include every essential element of an offense." United States v. Perry, 757 F.3d 166, 171 (4th Cir. 2014) cert. denied, No. 14-7289, 2015 WL 133401 (U.S. Jan. 12, 2015) (citing United States v. Kingrea, 573 F.3d 186, 191 (4th Cir. 2009)).  The contention that trial counsel did not properly move to dismiss the indictment is without merit; none of Hull's complaints touch upon the required elements of an indictment.

Hull argues in Claim 5 that the dates set forth in the indictment failed to provide him with adequate notice of the acts with which he was charged.  An indictment is not unconstitutionally vague because of listed dates if a particular date is not a substantive element of the crime. See United States v. Smith, 441 F.3d 254, 261 (4th Cir. 2006).  The indictment against Hull stated that "from a date unknown to the Grand Jury, but no later than late 2002 and continuing until on or about August 15, 2005… the defendants… conspire[d] to knowingly and intentionally distribute and possess with intent to distribute more than five kilograms of cocaine, a Schedule II controlled substance, and a measurable quantity of a mixture or substance containing marijuana… in violation of Title 21, United States Code, §841(a)(1)."  Dkt. No. 3.  The indictment provided Hull with sufficient notice of his charge.  Because the date of Hull's offense is not a substantive element of the conspiracy, and thus any motion to dismiss based on that issue would have been frivolous, Claim 5 should be dismissed.

In Claim 10, Hull alleges that trial counsel was ineffective in failing to move for dismissal of the indictment based on "unnecessary delay" of his detention hearing.  Hull's subsequent conviction moots this claim.  See United States v. Husband, 389 Fed. App'x 238, 240 (4th Cir. 2010).  Even if this issue were not moot, Hull has not demonstrated ineffective assistance because his counsel scheduled a detention hearing once Hull no longer was held on state charges; Hull

would have remained in either federal or state custody regardless of his trial counsel's actions prior to the resolution of the state charges. Dkt. No. 49 (noting that Hull was being held on state charges). Claim 10 should be denied.

Hull contends in Claim 11 that trial counsel was ineffective in failing to file a motion to dismiss the indictment based on pre-indictment delay. "Due process is not violated simply because the defendant is prosecuted after a substantial investigative delay." United States v. Stinson, 594 F.2d 982, 984 (4th Cir. 1979) (citing United States v. Lovasco, 431 U.S. 783, 796 (1977)). A defendant's right to due process is violated where the delay actually prejudices the defense and the government has "intentionally delayed to gain some tactical advantage" over the defendant or to harass him. United States v. Marion, 404 U.S. 307, 325 (1971); see also Stinson, 594 F.2d at 984. Applying this standard, there was no denial of due process. The federal grand jury began their investigation in December 2005, and Hull was indicted on May 11, 2006. The delay was justified by the need to conduct the grand jury investigation through three states. Hull has provided no evidence that the government intentionally delayed the investigation or that the delay somehow prejudiced his defense. As there was no obvious basis to support a motion to dismiss the indictment on the grounds of pre-indictment delay, I find that Hull has not demonstrated that trial counsel was ineffective in failing to file the motion. Clanton, 826 F.2d at 1359. Accordingly, I recommend that Claim 11 be dismissed.

In Claims 2 and 9, Hull files the interrelated claims of challenging his trial counsel's strategies relating to government witnesses. Hull argues in Claim 9 that his trial counsel should have moved to dismiss the indictment based upon the perjured testimony of Lawing and the irrelevant testimony of King and Stamps, and missed the opportunity because he failed to investigate the case. In Claim 2, Hull challenges trial counsel's failure to move to suppress Kings'

Case 6:06-cr-00013-NKM-RSB   Document 243   Filed 02/27/15   Page 18 of 43   Pageid#: 1497

and Stamps' testimony.  Courts refrain from second guessing the tactical and strategic decisions made by trial lawyers.  Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977).  Trial counsel's choice to not move to dismiss the indictment or to suppress the witnesses' testimony is a tactical decision.  See Sexton, 163 F.3d at 885.  Hull has not shown that his counsel would have likely succeeded in dismissing the indictment; the court would not have dismissed the indictment because of allegedly flawed witness testimony from a grand jury investigation. Furthermore, trial counsel tried to exclude the testimony of these witnesses later in trial through a motion *in limine*.  Dkt. No. 76.  The court denied this motion (Dkt. No. 89), heavily suggesting that the court would not have dismissed the indictment based on the same witnesses' testimony or suppressed that testimony at an earlier stage in the trial.  Regardless of the trial counsel's investigation or strategic choices discussed in Claims 2 and 9, no prejudice occurred.  I recommend dismissing Claims 2 and 9.

Hull alleges in Claim 14 that trial counsel was ineffective by not moving to suppress the video camera recovered from the rental van.  Similar to the reasoning supporting the denial of Claim 2's suppression concern, Hull again has not demonstrated either prong of Strickland.  Hull has not explained why it was unreasonable for trial counsel to not move to suppress; based on the trial evidence, it appears that trial counsel did not have a basis for the motion because Hull lacked a privacy interest in the searched van, which was rented by Booker and driven by Lawing.  See United States v. Mincey, 321 F. App'x 233, 241 (4th Cir. 2008) (finding the petitioner who drove a car rented by a third party did not have a reasonable expectation of privacy in the vehicle under the Fourth Amendment).  Failure to file a frivolous motion does not constitute ineffective assistance of counsel.  See Clanton, 826 F.2d at 1359.  Accordingly, I recommend that Claim 14 be dismissed.

Case 6:06-cr-00013-NKM-RSB   Document 243   Filed 02/27/15   Page 19 of 43   Pageid#: 1498

**C. Tactical Decisions (Claims 1, 3, 7, 12, 18, 20, 26, 29, 30, 32, 36, & 37)**

Hull alleges that his trial counsel provided ineffective assistance through a series of tactical decisions.[6] His complaints vary from failure to object to ambiguous jury verdicts, to not presenting a "mere presence" defense at trial, to failing to contest the drug weight attributed to him through the conspiracy. I find that Hull has not demonstrated either prong of Strickland for any of these claims regarding trial counsel's tactical decisions and, therefore, I recommend that Claims 1, 3, 7, 12, 18, 20, 26, 29, 30, 32, 36, & 37 be dismissed.

There are essentially two categories of decisions made by a criminal defendant's trial counsel: those decisions, deemed "personal," that must be made with the defendant's consent and those that may be made without the defendant's consent. See Sexton, 163 F.3d at 885 (citing Brown v. Artuz, 124 F.3d 73, 77 (2d Cir. 1997)). Decisions that may be made without the defendant's consent "primarily involve trial strategy and tactics," such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." Sexton, 163 F.3d at 885 (citing United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). "The decisions that must be made with the defendant's consent include the decision to enter a guilty plea, the decision to waive a jury trial, the decision to pursue an appeal, and… the decision to testify at trial." Sexton, 163 F.3d at 885 (citing Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); Adams v. United States ex rel. McCann, 317 U.S. 269,

---

[6] Hull moved for ineffective assistance for the following claims: Claim 1, stipulating to the expert witness qualification of DEA Forensic Chemist Steven Demchuck; Claim 3, failure to contest the drug weight attributed to Hull; Claim 7, failure to assert a violation of Hull's right to speedy trial; Claim 12, failure to object to the introduction of evidence of the arm sling/soft cast seized from Lawing's vehicle in Arizona; Claim 18, failure  to request that the jury be excused while the government and defense counsel argued about the relevance of King's testimony; Claim 20, failure to object to the government's leading questions to codefendant Booker regarding whether he knew Hull's middle name; Claim 26, failure to object to a variance between the charge in the indictment and the evidence presented at trial; Claim 29, failure to object to an ambiguous jury verdict; Claim 30, failure to request the jury be polled; Claim 32, failure to  present a "mere presence defense" at trial; Claim 36, failure to object to the court permitting the jury to read and possess omitted jury instruction indicating Hull had a prior drug conviction; and Claim 37, failure to challenge the jurisdiction of indictment.

275 (1942); Fay v. Noia, 372 U.S. 391, 438-40 (1963)) (internal citations omitted). Courts refrain from second guessing the tactical and strategic decisions made by trial lawyers. Stamper, 944 F.2d at 178; Goodson, 564 F.2d at 1072. "A claim of ineffective assistance of counsel does not open the flood gates to second guessing the tactics of trial lawyers." Hansford v. Angelone, 244 F. Supp. 2d 606, 613 (E.D. Va. 2002) (citing Goodson, 564 F.2d at 1072.

In Claims 12, 20, 26, 29, and 36, Hull contests his trial counsel's failure to object to the admission of the arm sling seized from Lawing's vehicle into evidence, the government's leading questions about his middle name to Booker, the variance between the charge in the indictment and the evidence presented at trial, an ambiguous jury verdict, and the jury's possession of an omitted jury instruction about prior drug conviction. "Constitutionally effective assistance does not require the assertion of every possible valid objection. Indeed, it is frequently better to remain silent rather than to draw attention to the matter." Hansford, 244 F. Supp. 2d at 613 (internal quotations and citations omitted). Counsel cannot be ineffective for failing to make a frivolous objection. Lawhorn v. Wright, No. 7:12-CV-00203, 2013 WL 1146252, at *15 (W.D. Va. Mar. 19, 2013). Hull has not explained how his trial counsel's choice to not object in any of these matters was objectively unreasonable, given the discretion that courts afford counsel in trial strategy.

Moreover, Hull has not shown prejudice resulting from trial counsel's choice to not object to the claims. Beyond generally claiming he informed his counsel that the arm sling was not his, Hull states no grounds on which his counsel could have successfully objected to the introduction of the sling in Claim 12. The outcome of Hull's conviction did not rest on his trial counsel's failure to object to the government's questioning of Booker about Hull's middle name in Claim 20. As for Hull's Claim 26 that trial counsel failed to object to a variance, trial counsel was not

ineffective because any objection would have been frivolous; no variance occurred because the indictment and the evidence at trial both involved the possession and distribution of more than five kilograms of cocaine and a measurable quantity of marijuana.[7]  Compare Dkt. No. 3, with Dkt. No. 171, p. 100-01; see Lawhorn, 2013 WL 1146252, at *21 (finding no ineffective assistance for failing to file a frivolous motion to dismiss when there was no variance between the charge and the evidence).

Hull has not demonstrated any prejudice in Claim 29, where he asserts that the jury was confused based on the court's instructions about the verdict form and that it "cannot be determined which violation [of cocaine or marijuana] the jury held movant accountable for." Dkt. No. 226, p. 37.  The jury's verdict form clearly shows an overall determination of guilt for violating 21 U.S.C. § 846, and a finding that Hull distributed and possessed with an intent to distribute five kilograms or more of a substance containing cocaine.  Dkt. No. 107.  Any ambiguity that Hull alleged resulted from the verdict form's discussion of count one as "cocaine and/or marijuana" is resolved by the jury's finding of Hull's possession of at least five kilograms;[8] trial counsel had nothing to object to and no prejudice occurred. As for Hull's last contention about trial counsel's lack of objection to the jury possessing the omitted instruction in Claim 36, the jury instruction about Hull's prior conviction–Instruction #9–was never read to the jury.  Dkt. No. 171, p. 97-98. Hull has not presented any evidence suggesting that the written instruction was submitted to the

---

[7] To the extent that Hull is alleging that the indictment was constructively amended, this claim also fails because Hull has not presented evidence that any amendment changed the offense he was charged with by the grand jury.  See United States v. Byram, 73 F. App'x 586, 588 (4th Cir. 2003).  The grand jury charged him with possession and distribution of more than five kilograms of cocaine and a measurable quantity of marijuana, and that is what was presented at trial.  Neither amendment nor prejudice occurred.

[8] Hull also appears to contest that jurors were unclear about their role in determining whether he possessed marijuana. In addition to showing no support for this allegation, no prejudice resulted because the jury found him guilty of possessing and distributing cocaine.  As a finding of guilt under § 846 only required the jury to find he possessed one of the controlled substances, their finding that he possessed cocaine obviated any  need for a finding that he possessed marijuana.

jury; thus, trial counsel had nothing to object to and no prejudice occurred. Accordingly, I find that Hull has not demonstrated that counsel provided ineffective assistance through his choice not to object to these issues, and that Hull was not prejudiced by the alleged deficient performance. Therefore, I recommend that Claims 12, 20, 26, 29, and 36 be dismissed.

In addition to his prior arguments about trial counsel's lack of objections, Hull takes issue in Claim 1 with his trial counsel's stipulation to the expert witness qualification of DEA Forensic Chemist Steven Demchuck. The decision about what stipulations should be made is considered a trial strategy or tactic. See Sexton, 163 F.3d at 885 (citing Teague, 953 F.2d at 1531; United States v. Caldwell, 201 F.3d 437, at *4 (4th Cir. 1999). Hull has not demonstrated why the court should not defer to the trial counsel's choice to stipulate to the expert's qualifications; he has not presented any evidence that Demchuck was unqualified or that challenging the witness's qualifications would have resulted in the exclusion of certain evidence or a different verdict. Additionally, Hull has not alleged any prejudice resulting from the stipulation such that a reasonable probability exists that the result of the proceeding would have been different if his counsel had refused to stipulate to the expert witness's qualifications or the authenticity of his analysis. I recommend dismissing Claim 1.

In Claims 3 and 37, Hull alleges that his trial counsel was ineffective when he failed to challenge the drug weight attributed to him (Claim 3) and the jurisdiction of the indictment (Claim 37). Under Claim 3, Hull cannot establish the first prong of Strickland that trial counsel was ineffective because both of his trial counsel repeatedly tried to reduce the drug weights attributed to him, via motions *in limine* (Dkt. No. 76), closing arguments (Dkt. No.171, p. 129-31), and oral argument at the sentencing hearing. (Dkt No. 172, p. 3). It is unclear how additional investigation by counsel would have changed this result with any reasonable probability. See Moses v.

Branker, No. 06-8, 2007 WL 3083548, at *3 (4th Cir. Oct. 23, 2007). As for Claim 37, trial counsel was not ineffective in his choice not to challenge the jurisdiction of the indictment; the federal authorities clearly had jurisdiction over his criminal activity under the Uniform Controlled Substances Act, see 21 U.S.C. § 801 et. seq., and thus any motion on that basis would have been frivolous. See Clanton, 826 F.2d at 1359. Hull cannot demonstrate both prongs of Strickland in either Claim 3 or 37. Therefore, I recommend that Claims 3 and 37 be dismissed.

Claim 7 states that trial counsel was ineffective in failing to assert a violation of Hull's right to a speedy trial under 18 U.S.C. § 3161(b). Section 3161(b) states, in relevant part, "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." Hull contends that his 30-day time period began when his codefendant, Lawing, was arrested in Arizona. Dkt. No. 226, p. 10. The language of the statute clearly shows that an individual's indictment must follow his individual arrest within 30 days, and not the arrest of one of his codefendants. Hull was federally arrested after the entry of his indictment. Dkt. No. 15. Trial counsel had no reason to assert a violation of speedy trial, and thus did not act ineffectively or cause any prejudice. Clanton, 826 F.2d at 1359. I recommend that Claim 7 be dismissed.

Hull asserts in Claims 18 and 30 that trial counsel did not properly conduct himself in relation to the jury, specifically contending that trial counsel failed to request that the jury be excused during the debate about the relevance of King's testimony (Claim 18) and failed to request the jury be polled (Claim 30). In support of Claim 18, Hull argues that allowing the jury to hear the proffers and objections regarding King's anticipated testimony led the jury to believe that the testimony was evidence of the conspiracy charged. In addition to the fact that trial

counsel's discussion was a tactical decision that deserves deference, no prejudice resulted because King ultimately testified. Dkt. No. 171, p. 67-74. The jury heard the testimony that was at the heart of the attorneys' discourse, regardless of trial counsel's inaction. Claim 18 should be dismissed for lack of prejudice. As for Claim 30, Hull offers no explanation as to why polling was necessary in his case. Instead, he states that the jury should have been polled merely to "ensure that the jury's guilty verdict [was] unanimous." Dkt. No. 208, p. 6. "Absent some indication that the jury's verdict was not unanimous, counsel did not perform deficiently by declining to poll the jury." United States v. Ambo, 64 Fed. App'x 416, at *2 (5th Cir. 2003); see also Hansford v. Angelone, 244 F. Supp. 2d 606, 613 (E.D. Va. 2002) (requiring allegations of specific facts to suggest a need for polling the jury). Because Hull has not demonstrated that his counsel had a reason to request the polling of the jury, and no reason to assume that such a motion would have changed the jury's decision, I recommend that Claim 30 be dismissed.

Under Claim 32, Hull argued that trial counsel was ineffective in failing to present a "mere presence" defense at trial. Again, the choice of what defenses to assert is clearly a discretionary choice of the trial counsel as it involves his "trial strategy and tactics." Sexton, 163 F.3d at 885 (citing Teague, 953 F.2d at 1531). Hull has offered no evidence to suggest why his trial counsel chose an unreasonably poor strategy. Even if trial counsel's choice of defense did not merit deference, any prejudice was rectified by Judge Moon's jury instruction, which stated:

> A person's *mere presence* at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

Case 6:06-cr-00013-NKM-RSB   Document 243   Filed 02/27/15   Page 25 of 43   Pageid#: 1504

Dkt. No. 171, p. 102-03 (emphasis added). Accordingly, I find that Hull has not demonstrated either prong of Strickland and, therefore, recommend that Claim 32 be dismissed.

### D. Treatment of Witnesses (Claims 16, 17, & 22)

Hull asserts that his trial counsel provided ineffective assistance three times through his treatment of witnesses. Trial counsel allegedly failed to make a "proper legal argument" in a motion *in limine* to exclude the testimony of government witnesses King and Stamps (Claim 16); he failed to cross-examine Stamps after he asserted his rights under the Fifth Amendment (Claim 17); and he did not use impeachment evidence of cooperation with the government against King (Claim 22).

Hull alleges that trial counsel was ineffective in failing to make a "proper legal argument" in his motion *in limine* to exclude the testimony of King and Stamps in Claim 16. A trial counsel's development of his argument on motion is quintessential trial strategy; a petitioner must show evidence "to overcome the presumption that counsel's performance was sound trial strategy." Michael v. United States, 168 F. Supp. 2d 518, 525 (D. Md. 2001) (internal quotations omitted); see also Sexton, 163 F.3d at 885. Trial counsel advanced several arguments on the motion, although did not specifically advance Hull's current argument that the government witnesses only discussed distribution of crack cocaine. Dkt. No. 76. Hull has not suggested why advancement of his particular argument would have been necessary for the trial counsel to reasonably represent him. Additionally, the manner in which the court denied trial counsel's motion *in limine* suggests that no prejudice resulted. In denying the motion, the court stated,

> [c]learly the act of distributing controlled substances is relevant to the question of whether Defendant was involved with a conspiracy to distribute controlled substances. It is more likely that one who distributes narcotics is, at the time of the distribution, involved with a conspiracy to do so.... Here, Defendant is on trial for participating

26

> in a conspiracy to deal drugs. Evidence tending to show that he is a
> drug dealer cannot possibly be excluded on grounds of prejudice.

Dkt. No. 89, p. 1-2. In light of the court's ruling, which did not distinguish between cocaine and

crack, but rather referred to "controlled substances" generally, the court would have rejected an

argument that King and Stamps testimony was irrelevant because their dealings with Hull

involved only crack cocaine. As Hull cannot demonstrate either prong of <u>Strickland</u>, I recommend

that Claim 16 be dismissed.

In Claim 17, Hull claims that trial counsel was ineffective in failing to cross-examine

Stamps after he asserted his rights under the Fifth Amendment not to incriminate himself. Trial

counsel did not cross-examine Stamps, which is a valid tactical decision because counsel had

nothing to ask Stamps due to his refusal to testify. <u>See</u> <u>Sexton</u>, 163 F.3d at 885. Hull also cannot

demonstrate prejudice, because he does not state how Stamps' testimony could have benefited his

defense; in fact, the government asserts that Stamps was expected to damage Hull's case based on

his grand jury testimony that he used to purchase crack cocaine from Hull.

Dkt. No. 221, p. 34. I find that Hull has not demonstrated that counsel's performance was

deficient or that he was prejudiced by counsel's alleged deficient performance and, thus, I

recommend that Claim 17 be dismissed.

Hull states in Claim 22 that trial counsel was ineffective in failing to use impeachment

evidence against King to show that he cooperated to gain favorable consideration for his state

sentence. Trial counsel cross-examined King regarding the possibility that his state sentence could

be changed, reduced, or modified as a result of his favorable testimony against Hull.

Dkt. No. 171, p.73-74. King testified that he did not believe that his state sentence would be

reduced based on his testimony in Hull's case. Dkt. No. 171, p. 74. In response to the

government's motion to dismiss, Hull references letters regarding King's cooperation from

Commonwealth Attorney Michael Doucette and United States Attorney John Brownlee, as well as a motion for sentencing modification before the Circuit Court of Campbell County. Dkt. No. 226, p. 26. Hull does not provide copies of these letters or court documents, or state that his attorney was in possession of these materials at the time of trial. Based on the evidence in the record, trial counsel sufficiently challenged King's credibility because of his cooperation with the government. It is unclear what Hull would have liked trial counsel to do in addition to cross-examining King. Whether King had a motion to reduce his sentence pending or not, King clearly stated that he did not think his testimony would impact his sentence; trial counsel had no control over his response. As Hull cannot demonstrate either prong of Strickland, I recommend that Claim 22 be dismissed.

### E. Responses to Prosecutorial Actions (Claims 6, 23, 24, 28, & 33)

Hull advanced five claims of ineffective assistance based on his trial counsel's actions in response to alleged prosecutorial misconduct. He contested trial counsel's failure to file pretrial motions requesting exculpatory evidence (Claim 6); his failure to object to misconduct in the prosecutor's closing argument (Claims 23 and 24); his improper advisement to the prosecutor that Hull might know two prospective jurors (Claim 28); and his failure to request all investigative reports pertaining to Booker (Claim 33).

Claim 6, which involves Hull's argument that he needed a motion for exculpatory evidence, cannot meet either prong of Strickland. Prosecutors have specific affirmative duties to criminal defendants. The prosecution may not withhold evidence that is "material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). Once a government witness has testified on direct examination, prosecutors are required to provide all Jencks Act documents, which consist of the witness's own words and are signed or otherwise approved by the witness. United States v. Roseboro, 87 F.3d 642, 645 (4th Cir. 1996); 18 U.S.C. § 3500(e). Any alleged

Case 6:06-cr-00013-NKM-RSB   Document 243   Filed 02/27/15   Page 28 of 43   Pageid#: 1507

shortcomings of the prosecution do not amount to ineffective assistance from the defense counsel. See, e.g., Strickler v. Greene, 527 U.S. 263, 307 n.23 (1999) ("We merely note that, if a prosecutor asserts that he complies with Brady through an open file policy, defense counsel may reasonably rely on that file to contain all materials the State is constitutionally obligated to disclose under Brady."). Hull has not explained how the prosecution violated their Brady obligations or the Jencks Act. By Hull's own admission, the government told counsel that Booker would testify about the source of the drugs (Dkt. No. 217, p. 9); although Booker gave a fuller story about the source rather than simply stating he received drugs from "Carlos,"[9] nothing in the record shows that the government did not meet its obligation under Brady. Dkt. No. 171, p. 10-54. As for Hull's contention that trial counsel failed to move for Jencks materials, the filing of a pretrial motion would have been frivolous because the prosecution's duty only arises after the witness's testimony. Hull has not demonstrated ineffective assistance in his trial counsel, or even deficiencies in the government's actions; furthermore, Hull has not discussed what exculpatory materials would have been produced or how pretrial motions seeking these materials would have created a reasonable probability the outcome of his trial would have been different. See Strickler, 527 U.S. at 281. I find that Claim 6 should be dismissed.[10]

Hull also alleges that trial counsel was ineffective in failing to object to misconduct during the prosecutor's closing argument in Claims 23 and 24. Hull asserted that the prosecutor commented during closing argument that King was "scared to testify but brought the truth with him" (Claim 23) and that Hull sent Booker to pick up the drugs from Lawing because he was the

---

[9] The government advised Hull that Booker would testify that "Carlos was the source of the drugs during the June 2005 trip and John the source of drugs for the July 2005 trip." Dkt. No. 221, p. 49. However, the November 2005 letter did not limit Booker's testimony only to this specific subject.

[10] Hull also alleged that he received ineffective assistance based on trial counsel's failure to move against the government's evidence of prior bad acts. The Fourth Circuit denied Hull's claim regarding 404(b) evidence, see United States v. Hull, No. 07-4295, 369 Fed. App'x 432, 435 (4th Cir. Mar. 5, 2010), so trial counsel was not ineffective in failing to file a motion. See Clanton, 826 F.2d at 1359.

29

higher ranked drug dealer (Claim 24).  Courts review claims of prosecutorial misconduct "to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process."  United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (internal quotations omitted).  Improper vouching occurs when a prosecutor either (1) bluntly states a personal belief in a witness's credibility that places the prestige of the prosecutor's office behind that witness, or (2) implies that the witness's testimony is corroborated by evidence known to the prosecutor but not the jury.  See United States v. Young, 470 U.S. 1, at *19 (1985); United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993).

The prosecutor did not improperly vouch or engage in misconduct during the closing argument, and thus trial counsel had no valid objection. Regarding Claim 23, the trial transcript shows that the prosecutor stated the following:

> you heard from Omar King briefly today.  And you saw him testify.
> And I don't think one time, other than identifying the defendant, did
> he look back that way.  He stared straight over there.  You could tell,
> he was scared.  But he came in and testified…. What did he say?  He
> bought cocaine from the defendant for about two years.  He didn't
> say for five years.  He didn't say he was buying pounds from him.  I
> mean, he said–what was it–a quarter ounce, I think, was at the time.
> So he didn't lay all of this weight on him.  Bring the truth with him.

Dkt. No. 171, p. 110.  For Claim 24, the prosecutor rebutted trial counsel's closing argument that Booker was the lead drug dealer by stating that "when you are higher up on the food chain, what do you have–your minions down below, the people driving, the people picking up dope–do you ever see the main person go and pick up a delivery? …what the defendant did, was to hang back and let somebody do it for them."  Dkt. No. 171, p. 139-40.  Neither of these statements use the prestige of the prosecutor's office to support a witness's credibility, implies that the witness's credibility is supported by unreleased evidence, or in any way infects the fairness of the trial.  The prosecutor's statements do not rise to the level of prosecutorial misconduct, and, thus, trial counsel

was not ineffective in failing to object. Even if the statements amounted to prosecutorial misconduct, Hull still has not shown that trial counsel's failure to object rose to the level of constitutionally ineffective assistance. See Moore v. United States, 934 F. Supp. 724, 727 (E.D. Va. 1996). Further, Hull has not demonstrated a reasonable probability that, but for counsel's failure to object, the outcome of his case would have been different. Accordingly, I recommend that Claims 23 and 24 be dismissed.

In Claim 28, Hull contends that trial counsel was ineffective when he advised the prosecutor that Hull might know two prospective jurors. Hull further claims these jurors were "struck due to their race and gender." Dkt. No. 208, p. 6. Hull provides no support for this claim other than that counsel allegedly spoke with the prosecutor "off the record." Dkt. No. 208, p. 6. Moreover, Hull has not stated how his counsel's alleged deficient performance prejudiced his case. I recommend that Claim 28 be dismissed.

Hull alleges in Claim 33 that trial counsel was ineffective in failing to request all investigative reports pertaining to Booker and improperly relying on the government's representation of Booker's anticipated testimony. Hull does not specify what, if any, reports were missing. Trial counsel can reasonably rely on a prosecutor's assertion that he complied with his duties under Brady. See, e.g., Strickler, 527 U.S. at 307 n.23. The government states that it turned over all required material regarding Booker prior to his testimony. Dkt. No. 221, p. 48. The government also avers that even if counsel made a specific request for "all investigative reports pertaining to Booker," the request would not have produced any additional information. Dkt. No. 221, p. 48. Hull has not shown how trial counsel acted ineffectively or how any prejudice would have resulted because all documents were produced. I recommend that Claim 33 be dismissed.

**F. Scientific Testing (Claims 4 & 13)**

Hull contests that trial counsel provided ineffective assistance in his lack of requests for scientific testing in claims 4 and 13. In Claim 4, Hull alleges that trial counsel failed to scientifically test tape recordings of a controlled delivery to determine whether the recordings had been altered. In Claim 13, Hull argues that trial counsel failed to scientifically test the videotape recovered from the van to ensure that it was actually Hull's voice on the videotape.

A trial counsel's choice not to subject evidence to further testing is a strategic decision. Counsel may have deliberately chosen to "forgo[] the extra step of obtaining more testing that would not help petitioner's case, and that might actually produce more evidence implicating him." Banks v. United States, No. 5:05CR30, 2010 WL 3855065, at *17 (N.D.W. Va. July 21, 2010) report and recommendation adopted, No. 5:05CR30, 2010 WL 3854426 (N.D.W. Va. Sept. 29, 2010). It is not within the purview of this court to second guess such strategic decisions. See Wiggins v. Corcoran, 288 F.2d 629, 640 (4th Cir. 2002). Hull offers no evidence that the voice on the tape recordings and video was not his or that any "scientific testing" of the recordings would indicate that either had been altered. Testing these tapes may have led to strengthening the government's case, considering that the government had already established a foundation for both tapes through the testimony of Lawing and Detective Marty Soyars. Dkt. No. 170, p. 190-95; Dkt. No. 171, p. 78-87. The court should not speculate as to the reasons for trial counsel's decision. Moreover, Hull has not demonstrated that testing the recordings would have affected the outcome of the trial with any reasonable probability. I recommend dismissing Claims 4 and 13.

### G. Requests and Responses to Court Instructions (Claims 15, 21, 25, 27, & 31)

Hull asserts five claims of ineffective assistance relating to the court's instructions to the jury. He contends that trial counsel should have requested a cautionary jury instruction for the transcripts of recorded conversations (Claim 15), a <u>Pinkerton</u> instruction (Claim 25), and an instruction addressing a conspiracy involving multiple objects (Claim 31). Hull also avers that trial counsel improperly failed to object to the court's jury instruction to disregard the marijuana quantity findings on the verdict form (Claim 21), and failed to object to the court's final jury instruction regarding how much cocaine should be attributable to Hull (Claim 27).

The three instructions that Hull claims should have been requested do not amount to ineffective assistance. Under Claim 15, Hull argues that trial counsel was ineffective in failing to request a cautionary jury instruction for the transcripts of the recorded conversations of the controlled delivery. Hull has not shown that his trial counsel acted unreasonably by not moving for such an instruction; courts have broad discretion in allowing juries to review written transcripts while listening to recordings and during deliberations. <u>See</u> <u>United States v. Long</u>, 651 F.2d 239, 243 (4th Cir. 1981); <u>United States v. Breland</u>, 356 F.3d 787, 794 (7th Cir. 2004); <u>cf.</u> <u>United States v. Johnson</u>, 27 F. App'x 162, 163 (4th Cir. 2001) (finding no abuse of discretion for allowing jury to review transcripts during deliberations when petitioner had not challenged accuracy of transcripts and cautionary instruction had been issued that only the tapes, and not the transcripts, were evidence). It seems particularly likely that the court would have denied such a request as the recordings and transcripts had been authenticated. Moreover, although no cautionary instruction was provided, Hull has not explained how he was prejudiced by the lack of instruction. I recommend that Claim 15 be dismissed.

In Claim 25, Hull alleges that trial counsel was ineffective in failing to request a <u>Pinkerton</u> instruction be submitted to the jury. <u>See</u> <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946). In support of his claim, Hull argues that because counsel failed to request a <u>Pinkerton</u> instruction, the "jury was given the impression that they were indeed finding the total amount of drugs alleged in the conspiracy as a whole rather than what was reasonably foreseeable to [Hull]." Dkt. No. 226, p. 31-32. However, the court clearly instructed the jury, "In making your findings, you may only attribute to a defendant drug quantities he could reasonably foresee would be distributed or possessed with intent to distribute during the course of the conspiracy." Dkt. No. 171, p. 101. This instruction stated the law under <u>Pinkerton</u> and required the jury find only the amounts of controlled substances that Hull could reasonably foresee had been sold in furtherance of the conspiracy. Thus, any failure by counsel to request a specific jury instruction on "reasonable foreseeability" was remedied by the court instructing the jury on this exact point. Hull has not demonstrated the prejudice prong of <u>Strickland</u> and I recommend that Claim 25 be dismissed.

Claim 31 advances that trial counsel was ineffective in failing to request a jury instruction addressing "conspiracy involving multiple objects." Hull does not specify how the court's jury instructions were inadequate or inaccurate regarding the law of conspiracy. <u>See</u> <u>United States v. Dickerson</u>, 27 F. App'x 236, 243 (4th Cir. 2001) ("The district court is given wide latitude in formulating its jury instructions, and, to the extent the instructions accurately state the controlling law, they will be upheld.") (citing <u>United States v. Hassouneh</u>, 199 F.3d 175, 181 (4th Cir. 2000)). A review of the record shows that the court sufficiently instructed the jury, including advising them of the elements of a drug conspiracy and the law of conspiracy.

Dkt. No. 171, p. 100-05. Hull further has not elaborated on how he was prejudiced by the lack of requested instruction. Accordingly, I find that Hull has not demonstrated either prong of Strickland and, therefore, recommend that Claim 31 be dismissed.

Hull also brings ineffective assistance claims for his counsel's failure to object to two jury instructions about the drug amounts attributable to him. Decisions about what objections should be raised are considered trial strategy and tactics. See Sexton, 163 F.3d at 885 (citing Teague, 953 F.2d at 1531. "Constitutionally effective assistance does not require the assertion of every possible valid objection. Indeed, it is frequently better to remain silent rather than to draw attention to the matter." Hansford, 244 F. Supp. 2d at 613 (internal quotations and citations omitted).

In Claim 21, Hull alleges that trial counsel was ineffective in failing to object to the court's jury instruction to disregard the marijuana quantity findings on the verdict form and the court's alleged statement to the jury that it believed there was no marijuana involved in the conspiracy. Upon review of the record, the court did not state that it believed no marijuana was involved in the conspiracy; the court only instructed the jury not to determine the quantity of marijuana, presumably because the trial evidence did not establish the minimum threshold of marijuana required for a penalty under 21 U.S.C. § 841(1)(B). Dkt. No. 171, p. 106. It is unclear what trial counsel could have objected to in this situation. See Clanton, 826 F.2d at 1359. Furthermore, there is no evidence of prejudice. Although Hull asserts that the instruction "allowed the jury to be forced into a cocaine or nothing verdict reflected by the jury remaining silent as to the decision making and determination of the marijuana alleged in the conspiracy" (Dkt. No. 226, p. 25), nothing in the record suggests that the instruction or the jury's understanding of the instruction

35

would have affected their review of the trial's evidence of cocaine. I find that Hull has not demonstrated either prong of <u>Strickland</u> and, I recommend that Claim 21 be dismissed.

Claim 27 asserts that trial counsel was ineffective for failing to object to the court's final jury instruction regarding how much cocaine should be attributable to Hull, as compared to the conspiracy as a whole. Both the court's instructions to the jury and the verdict form clearly explained that only those drug quantities Hull could reasonably foresee could be attributed to him. Dkt. No. 171, p. 101; Dkt. No. 107. Again, counsel ultimately had nothing to object to and Hull has not explained what, if any, prejudice resulted from his trial counsel's choice not to object. I recommend that Claim 27 be dismissed.

### H. Post-Trial Ineffective Assistance (Claim 19)

Hull claims that counsel was ineffective for failing to "turn over an omitted page of [codefendant] Leon Lawing's investigative report," hindering Hull's ability to bring a § 2255 motion. Hull does not discuss what "investigative report" he is referring to, specify how it has hampered his ability to bring a § 2255 motion, state when this alleged failure to turn over the report occurred, or if it even occurred during trial counsel's representation. In response to the government's assertion that it was unclear what report Hull was requesting, Hull responded only that he received "partial discovery in regards to the missing pages of Lawing's investigative reports." Dkt. No. 226, p. 23. Without knowing what Hull believes was in the report, it is unclear how he could have been prejudiced by trial counsel's alleged failure to turn over information. I find that Hull has not demonstrated both prongs of <u>Strickland</u> and, therefore, I recommend that Claim 19 be dismissed.

Case 6:06-cr-00013-NKM-RSB   Document 243   Filed 02/27/15   Page 36 of 43   Pageid#: 1515

## I. Alleged Failure to Investigate (Claims 34 & 35)

Under Claims 34 and 35, Hull alleges that his trial counsel failed to investigate the phone records of Lawing and Booker, as well as the authenticity of the Best Buy receipts and GMAC insurance documents recovered from the rented van. A failure to investigate claim requires the petitioner to demonstrate that adequate investigation would have uncovered information that created a reasonable probability of a different outcome. See Moses, 2007 WL 3083548, at *3. A trial counsel's choice not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Tucker v. Ozmint, 350 F.3d 433, 440 (4th Cir. 2003) (citing Wiggins, 539 U.S. at 521-22).

Hull contests in Claim 34 that trial counsel's failure to investigate phone records did not allow him to challenge the government's evidence regarding Hull's involvement in the conspiracy, as shown through phone call logs. In response to the government's motion to dismiss, Hull essentially rehashes the evidence of the phone calls introduced at trial, stating the call logs do not show he was a part of the drug conspiracy. Dkt. No. 226, p. 41-45. Hull has not demonstrated ineffectiveness of counsel. He does not specify what counsel would have discovered by "proper investigation" which would have discredited the phone records introduced at trial. When examining ineffective assistance claims, the court must appreciate the practical limitations and tactical decisions that trial counsel faced. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. Particularly when evaluating decisions not to investigate further, we must regard counsel's choices with an eye "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

Case 6:06-cr-00013-NKM-RSB   Document 243   Filed 02/27/15   Page 37 of 43   Pageid#: 1516

judgments." Id. at 691. Because Hull does not provide any evidence of what further or "proper investigation" would have revealed, and a review of the record reveals no ineffective assistance on this issue at trial, I recommend that Claim 34 be dismissed.

In Claim 35, Hull alleges that trial counsel was ineffective in failing to investigate the authenticity of the Best Buy receipts and GMAC insurance documents police recovered from the van, which bore Hull's signature, or alternatively failing to file a motion to suppress those items. Hull does not allege how these documents were not authentic or what further investigation would have uncovered. Hull also states no grounds on which a motion to suppress was warranted, or might have succeeded. Failure to file a motion for which there is no obvious basis does not constitute constitutionally ineffective assistance. Clanton, 826 F.2d at 1359. Accordingly, I recommend that Claim 35 be dismissed.

### IV. Appellate Counsel's Alleged Ineffective Assistance (Claims 38-43)

Hull alleges six claims of ineffective assistance of appellate counsel, which are evaluated under the same Strickland analysis as his allegations against trial counsel. In order to succeed on an ineffective assistance claim against appellate counsel, a petitioner must show a counsel's strategic choices in formulating the appeal "fell below an objective standard of reasonableness" and that a reasonable likelihood exists that an outcome on appeal would have been different absent counsel's errors. See United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). "Appellate counsel has no constitutional duty to raise on appeal every non-frivolous issue requested by defendant." United States v. Murphy, No. 1:06CR00062, 2011 WL 181938, at *2 (W.D. Va. Jan. 20, 2011) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)). The court presumes that appellate counsel decided which issues were most likely to succeed on appeal. Pruett v. Thompson, 996

F.2d 1560, 1568 (4th Cir. 1993). For the reasons stated herein, I recommend that Hull's ineffective assistance of appellate counsel claims be dismissed.

Hull contends in Claim 38 that "Appellant Counsel's misstatements and mis-framements of the issues raised on appeal violated petitioner's due process under the Constitution's 5th Amendment." Dkt. No. 208, p. 8. Hull's appellate counsel, Steven Jay Rozan, raised three points of error in his brief before the Fourth Circuit: (1) the district court erred in denying Hull's Rule 29(a) Motion for Judgment of Acquittal, (2) the district court abused its discretion in misapplying Federal Rule of Evidence 404(b) by allowing the testimony of the government witnesses relative to their purchase of crack cocaine, and (3) the district court erred in sentencing a Base Offense Level of 38 based on United States v. Apprendi.[11] See Brief for Petitioner, United States v. Hull, 369 Fed. App'x 432 (4th Cir. 2010) (No. 07-4925), at *2-3. Based on Hull's reply brief, it appears that Hull's claim deals with Rozan's argued second point of error relating to the alleged abuse of discretion under Rule 404(b), which focused on government witness King's testimony about Hull dealing "crack" cocaine.[12] Id. at *13. Framing Hull's argument in Strickland's two-prong requirement, it is unclear how Rozan misstated his argument about King's testimony or how this misstatement prejudiced his success on appeal. Upon review of Rozan's argument, the Fourth Circuit held that King's testimony did not constitute character evidence but in fact was evidence of "other crimes, wrongs, or acts" that could prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." United States v. Hull, No. 07-4295, 369 Fed. App'x 432, 435 (4th Cir. Mar. 5, 2010). The Fourth Circuit found the evidence admissible

---

[11] The Court notes that appellate counsel appears to have meant Apprendi v. New Jersey, 530 U.S. 466 (2000), which he correctly referred to later in his argument. See United States v. Hull, No. 07-4925, Dkt. No. 26, p. 25 (4th Cir. 2010).

[12] Rozan's first and third points of error regarding the sufficiency of the evidence supporting the jury verdict and the sentencing under Apprendi are sufficiently addressed by the court's review of trial counsel's ineffective assistance. See, e.g., supra Claim 8 and accompanying text.

because it supported the government's showing that Hull knowingly and voluntarily engaged in the charged conspiracy. Id. As the government admits, there is some confusion about whether the district court accepted King's testimony as direct evidence of the conspiracy. Dkt. No. 221, p. 56 n.16. Although Hull disagrees with how Rozan presented his argument against the use of King's testimony, this was a tactical choice that does not amount to ineffective assistance. See Murray v. Carrier, 477 U.S. 478, 484 (1986). Moreover, the Fourth Circuit's full analysis of the admission of King's testimony dispels any prejudice that possibly could have resulted from his tactical choice. Regardless of Rozan's approach to arguing against King's testimony, the Fourth Circuit's analysis suggests that it would have allowed King to testify in support of Hull's involvement in a conspiracy. No prejudice resulted from Rozan's tactical decision. Claim 38 should be dismissed.

Under Claims 39 and 40, Hull contends that Rozan ineffectively represented him because he failed to respond to Hull's inquires about issues to be raised on appeal, was suspended from the practice of law in multiple jurisdictions during his supplementation period before the Fourth Circuit, and suffered from enormous duress and depression. These arguments have already been addressed by the Fourth Circuit. United States v. Hull, No. 07-4925 (4th Cir. July 23, 2010). The Fourth Circuit held that despite Rozan's noncompliance with some of the court's rules and his subsequent suspension, "ineffective assistance of counsel does not conclusively appear on this record, as Hull fails to show how Rozan's actions amounted to constitutionally deficient performance that prejudiced this appeal." Id. (internal citations omitted). "Once an issue has been fully considered and decided by the court of appeals, the defendant cannot relitigate the issue before this court under § 2255." United States v. Shelton, No. 1:04CR00045, 2009 WL 90119, at *3 (W.D. Va. Jan. 14, 2009) (citing Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976).

For the same reasons as the Fourth Circuit, I recommend dismissing Hull's claims as well. Hull's claim is too broad to be properly considered. See, e.g., United States v. Roane, 378 F.3d 382, 400-01 (4th Cir. 2004); Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992). Hull fails to specify what inquiries he made to appellate counsel to which counsel did not respond. Additionally, Hull has not stated how his counsel's suspension or alleged breakdown constituted a claim under Strickland. Counsel was suspended only after filing Hull's briefs with the court of appeals. It is not enough for Hull to allege that counsel was subsequently suspended or that he suffered a "complete breakdown." To justify habeas relief, Hull must show that counsel's subsequent suspension or depression caused him to provide ineffective assistance in a particular instance. Hull fails to allege a specific instance in which counsel performed deficiently as a result of his subsequent suspension or duress. Moreover, Hull cannot demonstrate the second prong of Strickland because he has not demonstrated how the suspension or depression impacted his constitutional rights. Accordingly, I recommend that Claims 39 and 40 be dismissed.

In Claim 41, Hull alleges that appellate counsel was ineffective in failing to argue on appeal that the district court erred by denying his motion to continue the trial date. "[A] trial court's denial of a continuance is… reviewed for abuse of discretion; even if such an abuse is found, the defendant must show that the error specifically prejudiced [his] case in order to prevail." United States v. Williams, 445 F.3d 724, 739 (4th Cir. 2006) (internal citation omitted); see also United States v. Walker, 403 F. App'x 803, 807-08 (4th Cir. 2010) (finding a trial court's denial to continue five days before trial as not an abuse of discretion). The court denied Hull's motion for continuance because "the ends of justice served by granting a continuance in this matter do not outweigh the best interest of the public and the defendant in a speedy trial."

Dkt. No. 88. Hull contends in his response that despite his counsel having six months to prepare for trial, he "wasn't comfortable with his trial counsel's ability to effectively represent him." Dkt. No. 226, p. 50. Hull contended that his trial counsel needed more time because of the lack of "necessary motions" he should have filed for discovery and codefendant Booker's input of a guilty plea five days before trial. Id. Hull further stated that he "was prepared to hire co-counsel, however co-counsel stated that the 8 days was not a sufficient amount of time for him to prepare and be effective counsel." Id.

The Fourth Circuit regularly has found that district courts did not abuse their discretion when trial counsel had multiple weeks to prepare for trial. See, e.g., United States v. Titus, 475 F. App'x 826, 833 (4th Cir. 2012); United States v. Badwan, 624 F.2d 1228, 1230–31 (4th Cir. 1980). Although Hull alleged that the counsel he wished to hire disagreed with proceeding to trial based on "false pretenses" like his trial counsel had allowed (Dkt. No. 226, p. 51), he did not explain how lacking co-counsel at trial prejudiced him. Because of the lack of asserted prejudice from the denied motion to continue, and the extremely unlikely possibility that the Fourth Circuit would find the district court abused its discretion in denying the order, appellate counsel was not ineffective in his choice to not advance this argument. I recommend that Claim 41 be dismissed.

Hull's final two claims of ineffective appellate counsel are also without merit. Hull alleges in Claim 42 that appellate counsel was ineffective in failing to argue on appeal that the jury verdict was ambiguous. For the same reasons that I found Hull's Claim 29 failed, see supra p. 22-23, I also find that Hull has also not met his burden under Strickland as to appellate counsel. Accordingly, I recommend that Claim 42 be dismissed. Hull alleges in Claim 43 that counsel was ineffective in failing to request that he be sentenced for the "least punishable offense" of the conspiracy. Hull was charged and convicted of only one offense; appellate counsel could not

argue for a lesser offense because there was no other offense to which the court could sentence him. Accordingly, I recommend that Claim 43 be dismissed.

## V. RECOMMENDED DISPOSITION

Based on the foregoing, I find that Hull has not demonstrated that counsel provided ineffective assistance concerning any of his claims. Accordingly, I **RECOMMEND** that that the United States' motion to dismiss (Docket No. 221) be **GRANTED**, as Hull has failed to establish that he is entitled to relief under § 2255.

The Clerk of the Court is **DIRECTED** immediately to **TRANSMIT** the record in this case to the Honorable Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk of the Court is directed to send copies of this Report and Recommendation to the parties.

Enter: February 27, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge