IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 6:06cr00013-1 |
| | ) | |
| | ) | **MEMORANDUM OPINION and** |
| | ) | **ORDER ADOPTING REPORT** |
| v. | ) | **AND RECOMMENDATION** |
| | ) | |
| BRAD CHRISTOPHER HULL | ) | By: Norman K. Moon |
| | ) | United States District Judge |

Brad Christopher Hull, a federal inmate proceeding without counsel, filed this action under 28 U.S.C. § 2255, alleging 37 claims of ineffective assistance of trial counsel and six claims of ineffective assistance of appellate counsel. The United States filed a motion to dismiss, and I referred the matter to United States Magistrate Robert S. Ballou for proposed findings of fact and recommendations for disposition. The Magistrate Judge filed a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), finding that Hull's claims are without merit and recommending that the § 2255 motion be dismissed. Objections have been filed and, for the reasons stated herein, I will overrule the objections, adopt the Report and Recommendation, and grant the Government's motion to dismiss.

I.

The Magistrate Judge appointed counsel to represent Hull regarding Claim 8, and the Magistrate Judge conducted an evidentiary hearing. Claim 8 asserted that Hull's trial counsel advised Hull that he would receive the same sentence whether he pleaded guilty or went to trial, and that Hull's prior conviction could not be used as a basis to double his statutory minimum sentence.

Hull's appointed counsel filed the following objection:

Mr. Hull and his trial counsel both testified at the evidentiary hearing in this matter. Trial counsel, Melvin Hill, testified that he had very little recollection of this case except that Mr. Hull wanted to go to trial. Mr. Hill did not recall what he told Mr. Hull about the plea agreement offered by the government or what he told him about the sentencing information. Mr. Hull had a clear recollection that Mr. Hill informed him the sentencing information was unconstitutional and would not stand. Mr. Hull also specifically remembered his trial counsel telling him the plea agreement would not offer him any benefit at sentencing and that he had nothing to lose by going to trial.

The Report ignored the testimony of witnesses and instead relied upon a note found in the file of Mr. Hull's trial counsel which read, "Advised CL G plea offer–would face 20-year sentence if convicted". Although counsel was representing Mr. Hull in the federal action and simultaneously in a pending state court felony, the Report interpreted this note to mean that trial counsel fully informed Mr. Hull that he faced a mandatory minimum of twenty years in the federal criminal action if he rejected the plea offer.

The Report adds the statement of trial counsel that Mr. Hull wanted to go to trial to the note to conclude Mr. Hull would have rejected the plea agreement even if counsel had properly informed him of the consequences. There is simply no basis in the record for this assumption. Mr. Hull's own testimony was that he would have considered the advice of counsel and made the decision that was in his best interest.

The essence of counsel's objection is that the Magistrate Judge "ignored the testimony of witnesses" and that "[t]here is simply no basis in the record for" the Magistrate Judge's conclusions. However, the Magistrate Judge explicitly took "into account the testimony from the evidentiary hearing, the extent of detail and coherent nature of the testimony, [his] observation of the witnesses, and the degree to which the testimony is consistent or inconsistent with, or corroborated by, other evidence in the case."

The Magistrate Judge undertook an evidentiary hearing on Claim 8

to determine whether Hull's counsel rendered ineffective assistance by erroneously advising him (1) to reject the government's plea offer because he would receive the same sentence whether he plead guilty or went to trial, and (2) that his prior conviction would not be used as a basis to double his mandatory minimum sentence.

2

At the hearing, "Hull and his former trial counsel, Melvin Hill, testified about their trial strategy and review of the government's offered plea." Using "[t]he testimony of both witnesses," the Magistrate Judge then "created the following summary of events surrounding the government's offered plea":

> The United States Attorney's Office sent a letter to trial counsel on July 3, 2006, notifying him that Hull's sentencing exposure from the indictment included a mandatory minimum of ten years and that his estimated sentencing exposure ranged from 151 to 188 months without prior acceptance of the plea, or 108 to 135 months with acceptance of the plea. Dkt. No. 238-2, p. 1-2. The letter also stated that the government intended to file an § 851 Sentencing Information[1] if they went to trial, which would increase Hull's mandatory minimum sentence to twenty years. Dkt. No. 238-2, p. 2. Trial counsel acknowledged at the evidentiary hearing that this letter stated Hull faced a more severe sentence if he pursued trial. Dkt. No. 240, p. 13. In a September 7, 2006 letter, the [government's counsel] asked trial counsel to speak with him and reiterated he would not file the § 851 Sentencing Information until after they spoke. Dkt. No. 238-2, p. 3. The government sent a third letter to trial counsel dated October 11, 2006–roughly five weeks before trial. Dkt. No. 238-2, p. 5-6. [Government's counsel] again outlined Hull's sentencing exposure. Dkt. No. 238-2, p. 5-6. The government wrote that Hull's prior drug felony conviction would increase his mandatory minimum sentence to 20 years, and that they would recommend a guideline range of 292 to 365 months based on Hull's prior drug trafficking trips to California and "the fact that Hull cooked the cocaine into crack." Dkt. No. 238-2, p. 6. Trial counsel sent a letter to Hull dated October 12, 2006 that included the government's plea offer and confirmed an appointment with him for October 17, 2006. Dkt. No. 238-1, p. 1. At the evidentiary hearing, trial counsel stated that the purpose of the meeting would have been "[t]o review the case in general, or to review the proposed plea agreement." Dkt. No. 240, p. 12.
>
> The events after trial counsel's letter to Hull are the subject of Hull's controversy, mostly as a result of lack of memory due to the age of the case. Trial counsel had very little recollection of his representation of Hull. Dkt. No. 240, p. 5. Although he did not remember he had received a plea offer, trial counsel was able to confirm his signature on the letter to Hull accompanying the government's offer. Dkt.

---

[1] The Magistrate Judge noted that

[t]he relevant criminal history of Hull includes a conviction in the Lynchburg Circuit Court in October 1995 for possession of cocaine with intent to distribute, in violation of Va. Code § 18.2-248. Dkt. No. 73; *see also Commonwealth v. Hull*, CR95006666-00 (Va. Cir. Ct., Lynchburg Cir. 1995). The court sentenced Hull to ten years in prison, with five years suspended, and probation for ninety-nine years.

3

No. 240, p. 5-7. Trial counsel remembered meeting with Hull at his office, but he did not remember any of the details of the conversation or whether it concerned the plea agreement. Dkt. No. 240, p. 5, 7. He could not recall any decisions or conclusions he made in Hull's case, or whether he discussed Hull's sentencing exposure if he pursued trial. Dkt. No. 240, p. 26-28. Despite trial counsel's lack of memory for much of his representation of Hull, he did recall that "*Mr. Hull always wanted to go to trial. I do not recall a time during my representation of him–and again, I emphasize, I do not recall him seriously considering entering a guilty plea in this particular case.*" Dkt. No. 240, p. 26.

Trial counsel's case file for his representation of Hull provides a better picture of his representation. Dkt. No. 240, p. 27-28. In his notes for a client interview from October 24, 2006,[2] trial counsel wrote: "*Advised CL G plea offer–would face 20-year sentence if convicted.*" Dkt. No. 238-2, p. 7. Trial counsel could not "recall the context in which I would have made the notations or any of the notes on October 24th." Dkt. No. 240, p. 29. Although trial counsel's memory did not provide context to his notes, his stated pattern and practice supported the likelihood that his notes summarized his discussion of a twenty-year sentencing exposure with Hull. Trial counsel explained that his practice upon receiving any letter from the government, including letters with plea offers, was to forward it to his clients and urge them to set up an appointment to discuss the information. Dkt. No. 240, p. 10, 17-19. In addition to his interview notes, the case file included a draft of a sentencing memorandum[3] and a copy of *Apprendi v. New Jersey*, 544 U.S. 13 (2005). Dkt. No. 240, p. 31. The memorandum argued that Hull's prior conviction and increased drug weight should not be considered at sentencing because of *Apprendi*. Dkt. No. 238-1, p. 17-19. Although the memorandum is forcefully worded, *trial counsel clearly understood that the applicability of* Apprendi *was within the court's discretion*. Dkt. No. 238-1, p. 17 ("*If* the Court finds that the drug weight calculation and the information are unconstitutional then the guideline range is 151-188 months.").

*Hull's memory differs from his trial counsel's testimony, case file, and stated practice*. Hull did not remember whether trial counsel showed him the government's

---

[2] The Magistrate Judge noted that

[t]rial counsel had no recollection of whether his October 17 meeting scheduled with Hull to discuss the plea offer had been moved to October 24. Dkt. No. 240, p. 28. His notes also inexplicably included information about witnesses and their phone numbers. Dkt. No. 240, p. 21-22, 29. No notes were offered at the evidentiary hearing regarding any contact on October 17 with Hull.

[3] The Magistrate Judge noted that "[t]rial counsel recalled being relieved as counsel prior to sentencing and stated 'it would have surprised me that I drafted a sentencing memorandum.' Dkt. No. 240, p. 31."

4

letters, but he was aware of the government's attempt to enhance his mandatory minimum. Dkt. No. 240, p. 39, 46. Hull recalls having a meeting with trial counsel discussing the plea offer, though he did not know the date. Dkt. No. 240, p. 34. Although Hull failed to remember exactly what happened during their meeting to discuss the plea agreement, he emphasized that trial counsel clearly explained that the government's enhancement was unconstitutional. Dkt. No. 240, p. 34-35, 42. Hull remembered trial counsel telling him "being that the enhancement was unconstitutional, my sentencing exposure still remained a ten-to-life situation in both cases of the plea or trial, so that, you know, I really didn't have nothing to lose or gain by taking the plea or proceeding to trial." Dkt. No. 240, p. 35. Hull stated that trial counsel recommended foregoing the plea offer because his sentence would be the same regardless of the plea, and they could at least try to win the case if he rejected it. Dkt. No. 240, p. 35.

Hull emphasized that he heavily relied on trial counsel's advice because he lacked a general understanding of his legal circumstances. In his recollection, trial counsel did not explain to him what he would be pleading guilty to if he accepted the plea agreement.[4] Dkt. No. 240, p. 43. Hull could not recall if he had a discussion with trial counsel about how much time he may serve if he was found guilty of the indicted charges. Dkt. No. 240, p. 45. Hull said he had no conversations about sentencing guidelines. Dkt. No. 240, p. 44. When asked whether he would have accepted the plea offer if he had understood the effect of *Apprendi*, Hull noted his lack of understanding of the law and responded "I would have done what was most beneficial to me under the advice of my attorney." Dkt. No. 240, p. 37.

The government withdrew the plea in its November 2, 2006 letter to trial counsel. Dkt. No. 238-1, p. 15-16. Trial counsel stated at the hearing that he had never known the government to withdraw a plea offer after a defendant has accepted it. Dkt. No. 240, p. 8. Trial counsel believed that the United States Attorney's Office would have proceeded in presenting the guilty plea to the court if Hull had accepted, and that the court would have accepted such a plea offer. Dkt. No. 240, p. 8-9.

(Emphasis added.)

The Magistrate Judge found that "[t]he evidence does not support" Hull's allegation "that

---

[4] The Magistrate Judge noted the following:

Hull understood that he was charged with conspiracy to possess cocaine and marijuana, though he did not mention his charge for distribution. Dkt. No. 240, p. 43. Hull's understanding of the plea agreement is less clear; at the evidentiary hearing, he stated "I mean, at the time, I mean, when I read it, I didn't have any idea what I was reading. I wasn't knowledgeable of the law, you know." Dkt. No. 240, p. 42.

5

trial counsel advised Hull that the government's intended use of the § 851 Sentencing Information or post-sentence increase of the drug amounts were unconstitutional," observing that

> [t]rial counsel's understanding of *Apprendi* both at the evidentiary hearing and at the time he wrote Hull's sentencing memorandum suggests that he would not have provided such unwavering advice about the constitutionality of the government's sought sentencing. In the Sentencing Memorandum, counsel argued that Hull "should be sentenced . . . without consideration of the prior conviction" because "the information filed in this case [is] unconstitutional pursuant to *Apprendi*." Dkt. No. 238-1, p. 17-18. However, trial counsel arguably knew that *Apprendi* did not apply to the fact of a prior conviction or to facts that do not increase the statutory maximum sentence. It is clear that trial counsel understood this when he wrote, "*If* the court finds that the . . . information [is] unconstitutional…," and "…it is apparent that the *Apprendi* reasoning soon will be extended to the fact of prior convictions." (emphasis added). Dkt. No. 238-1, p. 17-18. Although incorrectly advising Hull about the constitutionality of the government's intended sentence during the plea offer stage would amount to ineffective assistance, **the evidence reflects this is not what happened between Hull and his trial counsel**.

(Bold emphasis added.) The Magistrate Judge further observed that "the notes from trial counsel's October 24, 2006 meeting with Hull support that he discussed the possibility of an increased statutory minimum sentence if the plea offer lapsed." Indeed, advising a client of a guilty plea offer and noting that the client "would face 20-year sentence if convicted" is unequivocal. The Magistrate Judge allowed, however, that "it is possible that trial counsel's note regarding a twenty-year sentence related to Hull's ongoing state charges," but determined that "it seems more probable that the note referred to his federal charge based on the timing of the offered plea agreement," adding that,

> [m]oreover, the notes are in line with trial counsel's practice. As trial counsel stated that it was his practice to send all of the government's letters to his clients, Hull most likely met with trial counsel to discuss his plea offer and new statutory minimum sentence. Although trial counsel's practice is not definitively borne out in Hull's case, the evidence presented at the hearing supports the likelihood that he did advise Hull of the new statutory minimum and did not claim the government's position was futile due to *Apprendi*. *Considering how careful trial counsel was in explaining what he remembered of his representation, the court can credibly accept his testimony, case file, and standard practices*.

6

(Emphasis added.)

Other than Hull's own testimony, "none of the evidence suggests that trial counsel advised Hull not to accept the plea offer because of *Apprendi*":

> Hull's claim that counsel promised him a sentence of ten years regardless of acceptance of a plea offer is substantially undercut by evidence that Hull knew that advancing to trial did not guarantee him a sentence. ***Hull admitted that he read the plea agreement, which clearly stated his potential sentencing exposure***. Trial counsel's pattern and practice was to show his client all of the letters received from the government. *All three letters highlighted Hull's much more severe potential sentencing exposure*. In light of the October 11, 2006 letter outlining Hull's sentencing exposure, trial counsel's understanding of the effect of a § 851 Sentencing Information, the October 24, 2006 meeting between trial counsel and Hull to discuss the plea agreement and the case, trial counsel's note in his file, and *the testimony presented at the evidentiary hearing*, I find Hull's allegation that counsel told him that he would face the same sentencing exposure regardless of acceptance of the government's plea offer is incredible and that Hull has not met his burden to demonstrate that counsel's performance was constitutionally deficient.

(Emphases added.)

Regarding Hull's claim that trial counsel advised him that his prior conviction and drug amounts would not be used as a basis to increase his statutory minimum sentence, the Magistrate Judge correctly found that, assuming the truth of that assertion,

> Hull has failed to demonstrate that this advice prejudiced him. ***Defendants are not prejudiced by ineffective assistance at the plea offer stage if they did not seriously consider pleading guilty***. See Atkinson v. Schmidt, 486 Fed. App'x 713, 716 (10th Cir. 2012) (finding that a defendant who maintained his innocence throughout the trial was not prejudiced by ineffective assistance in his attorney's failure to inform him of the potential sentence because he would not have likely accepted the state's plea offer); *see also Lafler*[ *v. Cooper*, ___ U.S. ___.], 132 S. Ct. [1376,] 1389 [(2012)]. Trial counsel stated at the evidentiary hearing that "[i]t's my recollection Mr. Hull always wanted to go to trial. I do not recall a time during my representation of him–and again, I emphasize, I do not recall him seriously considering entering a guilty plea in this particular case." Dkt. No. 240, p. 26. When the court repeatedly asked Hull whether he would have been interested in pleading guilty, he ultimately said he would have accepted trial counsel's advice to plead guilty if he had been told that was the best opportunity. However, Hull did not eagerly express that he would

7

have considered pleading guilty prior to his trial and seemed to mostly rely on his belief that trial counsel determined he would always face the same sentencing exposure. Dkt. No. 240, p. 37-38. Trial counsel's memory of Hull's unwillingness to plead guilty casts a shadow on the veracity of Hull's testimony that he would have pled guilty on the advice of counsel. *In light of both witnesses' testimony, trial counsel's testimony is more credible. Trial counsel frankly told the court many times when he did not recall the specifics of his representation of Hull, so his memory that Hull did not seriously consider pleading guilty carries weight. With no evidence to show that he was interested in pleading guilty except for his after-the-fact testimony at the evidentiary hearing, Hull has not carried his burden that he was prejudiced by trial counsel's alleged advice.*

(Emphases added.)

Given "the totality of the evidence," the Magistrate Judge found that trial counsel did not advise Hull

> that the government's intended § 851 Sentencing Information or inclusion of additional drug weights were unconstitutional and would not increase his sentencing exposure at trial; trial counsel did not tell Hull he would receive the same sentence either through the plea or at trial; and Hull ultimately would not have suffered any prejudice if trial counsel had ineffectively advised him because he would have proceeded to trial regardless. Although it is deeply unsettling that trial counsel maintained so few notes relating to Hull's choice to decline the guilty plea, the available evidence and testimony prevent Hull from carrying his burden that he received ineffective assistance. . . . Hull has not carried his burden of showing he was prejudiced by ineffective assistance of counsel.

My review of Claim 8 discloses that there is no merit to appointed counsel's objection that the Magistrate Judge "ignored the testimony of witnesses" and that "[t]here is simply no basis in the record for" his determinations. To the contrary, as quoted above, the Magistrate Judge exhaustively examined the witnesses' testimony, and his conclusions are well-founded. Accordingly, I will overrule appointed counsel's objections regarding Claim 8, having in accordance with 28 U.S.C. § 636(b)(1) reviewed the Report and Recommendation, the objections thereto, and the relevant portions of the record *de novo*.

8

## II.

As a *pro se* petitioner, Hull also filed voluminous objections, reiterating the arguments made in his pleadings. Having reviewed the Report and Recommendation, the objections thereto, and the relevant portions of the record *de novo*, in accordance with 28 U.S.C. § 636(b)(1), I agree with the Magistrate Judge's recommendation, and I will overrule Hull's objections.

## III.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that the objections are **OVERRULED**, the Magistrate Judge's Report and Recommendation (docket no. 243) is **ADOPTED** in its entirety, the Government's motion to dismiss (docket no. 221) is **GRANTED**, Hull's § 2255 motion (docket no. 207) is **DISMISSED**, and this case is **STRICKEN** from the active docket of the court. Any other pending motions are **DENIED as MOOT**. Furthermore, Hull has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), and a Certificate of Appealability is therefore **DENIED**.

The Clerk of Court is **DIRECTED** to send copies of this order to the parties.

Entered this __30th__ day of July, 2015.

*Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE